**SO ORDERED.**

**SIGNED this 27 day of May, 2011.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| A-1 PLANK & SCAFFOLD MFG., INC. | ) | |
|  | ) | Case No. 10-10379 |
| Debtor. | ) | Chapter 11 |
| _____ | ) | JOINTLY ADMINISTERED |
|  | ) | |
| GILLESPIE PRACTICAL | ) | |
| TECHNOLOGIES, INC. | ) | |
| and | ) | |
|  | ) | |
| GILCHECK MANAGEMENT, INC. | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | Adversary No. 10-5137 |
|  | ) | |
| A-1 PLANK & SCAFFOLD MFG., INC., | ) | |
|  | ) | |
| and | ) | |
|  | ) | |
| SUNFLOWER BANK, N.A., | ) | |
|  | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION FOR VOLUNTARY DISMISSAL WITH PREJUDICE

Plaintiffs Gillespie Practical Technologies Inc. ("GPT") and Gilcheck Management, Inc. ("Gilcheck") move to dismiss Sunflower Bank, N.A.'s counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and to voluntarily dismiss their adversary Complaint with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).[1] The Plaintiffs filed this adversary proceeding against A-1 Plank & Scaffold Mfg., Inc. ("Debtor") and the Bank to determine their respective interests in certain concrete forming products that had been conveyed to the Debtor by related corporation A-1 Scaffold & Shoring, Inc. ("Shoring"). In its answer, the Bank claimed a first lien in the TABLA products by virtue of security interests granted to it by Shoring and asserted counterclaims against the Plaintiffs for patent misuse and conversion.

**Background**

The Plaintiffs are Canadian corporations headquartered in Ontario. GPT owns patents and licensing rights on certain shoring and related construction technology known as TABLA. GPT entered into an Exclusive License Agreement with Shoring on August 10, 2004. The Agreement granted Shoring "an exclusive, non-assignable license to [] manufacture, sell and distribute" TABLA products in the United States in exchange for royalty payments to GPT in an amount equal to 50% of the Net Pre-Tax Selling Price of the assets. The Agreement granted GPT the right of first refusal on any proposed sale of TABLA products not in the ordinary course of business. The Agreement restricted Shoring from permitting others from using the licensed rights.

---

[1] Dkts. 32 and 33. These rules are made applicable to adversary proceedings by Part VII of the Federal Rules of Bankruptcy Procedure. All future references to "Rule" shall refer to the Federal Rules of Civil Procedure, unless otherwise noted.

Before the Debtor filed its chapter 11 case, Shoring transferred some of its TABLA products to the Debtor, who was in the business of selling and leasing concrete scaffolding and shoring equipment. The Debtor filed a Chapter 11 petition on February 21, 2010 and became a debtor in possession. On May 5, 2010, the Debtor filed Notice of Intended Sale #7 by which it sought leave to sell all its inventory and equipment, including the TABLA products that Shoring had transferred to it (Sale #7).[2] The Plaintiffs objected to Sale #7 and asserted their interest in the TABLA products.[3] On June 7, 2010, the Debtor filed Notice of Intended Sale #9 by which it sought to sell its lumber, TABLA, and all other inventory and miscellaneous property (Sale #9).[4]

On June 9, 2010, the Court approved Sale #7 and the Bank's $145,000 credit bid for all the property offered on that notice of sale and, to the extent the property included TABLA products, those items were sold subject to the rights and terms set forth in GPT's agreement with Shoring.[5] On July 28, 2010, after this proceeding was filed, the Court approved Sale #9, again to the Bank who made a credit bid.[6] As with Sale #7, the sale of the TABLA products, was approved subject to the rights and terms set forth in GPT's agreement with Shoring.[7]

Thereafter, the Plaintiffs filed this adversary proceeding against the Debtor and the Bank to determine their respective interest in the TABLA products referenced in the sale notices for Sales

---

[2] Dkt. 131.

[3] Dkt. 164.

[4] Dkt. 185.

[5] Dkt. 193, *see* p. 4, ¶ 14.

[6] Dkt. 249.

[7] *Id.* at 3-4, ¶ 13.

#7 and #9. They claimed that Shoring's transfer of the TABLA products violated the Agreement and that the Debtor could not sell the TABLA products free and clear of their interest. They also claimed that their rights in the TABLA products were superior in priority to the rights of the Bank.

In its answer, the Bank claimed a security interest in all TABLA inventory manufactured by or for Shoring and that its lien interest was superior to any rights to royalties that GPT has or claims.[8] The Bank also asserted two state law claims against the Plaintiffs, one for patent misuse and the other for conversion. The Bank claimed that the Plaintiffs had improperly directed Shoring's creditors to pay the Plaintiffs on accounts receivable that the Bank claimed as collateral and that the Plaintiffs took possession of Shoring's inventory, failed and refused to return that inventory, and converted that property for their own purpose.

**Discussion**

The Plaintiffs have filed two separate motions, one to dismiss the Bank's counterclaims under Rule 12(b)(1) for lack of subject matter jurisdiction, and the other relating to dismiss their declaratory judgment claim against the Debtor and the Bank under Rule 41(a)(2). Rule 12(h) requires a court to dismiss a claim if it lacks subject matter jurisdiction over it. Rule 41(a)(2) provides that an action may be dismissed at a plaintiff's request only by court order, on terms that the court considers proper, but "if a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." Because Rule 41(a)(2) requires courts to assess whether the counterclaim can stand alone and because the Court always has the duty to independently determine its own subject matter jurisdiction, we first consider the

---

[8] Dkt. 12 at 2, ¶11.

4

jurisdictional challenge to the Bank's counterclaims under Rule 12(b)(1).[9]

**A.    The Court's Jurisdiction Over The Bank's Counterclaims**

Federal Rule of Bankruptcy Procedure 7012(b) incorporates Federal Rule of Civil Procedure 12(b) into all adversary proceedings. Rule 12(b)(1) provides a means for dismissal due to lack of subject matter jurisdiction. When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction.[10]

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is raised either as a facial challenge or a factual challenge.[11] In a facial attack the movant challenges the allegations in the complaint regarding subject matter jurisdiction, requiring the court to accept those allegations as true.[12] In a factual attack, the movant goes beyond those allegations and challenges the facts upon which subject matter jurisdiction depends.[13] In reviewing a factual attack, the court may look beyond the allegations in the complaint and has wide discretion to allow documentary and even testimonial evidence.[14] The court generally does not convert the motion into one for summary

---

[9] *See United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993) (stating the court should address Fed.R.Civ.P. 12(b)(1) challenge before Fed.R.Civ.P. 12(b)(6) motion); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (stating the district court must consider jurisdictional motions first, because a court must find jurisdiction before considering the merits of a claim).

[10] *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992).

[11] *Paper, Allied-Industrial, Chemical & Energy Workers Int'l Union v. Continental Carbon Co.,* 428 F.3d 1285, 1292 (10th Cir. 2005).

[12] *Id.*

[13] *Id.*

[14] *Id.*

5

judgment,[15] unless resolution of the jurisdictional question is intertwined with the merits of the case.[16] Here the jurisdictional question is not intertwined with the merits of the counterclaims and the Court construes the motion as a Rule 12(b)(1) factual challenge without converting the motion into one for summary judgment.

Bankruptcy courts only have the jurisdiction and powers expressly or by necessary implication granted by Congress.[17] 28 U.S.C. § 1334 grants district courts original jurisdiction over bankruptcy cases and core proceedings arising in, arising under, or related to bankruptcy cases.[18] District courts may refer such cases and proceedings to bankruptcy judges under § 157(a). When a case is referred, § 157(b) enables bankruptcy courts to "hear and determine all cases under Title 11 and all core proceedings arising under Title 11, or arising in a case under Title 11[,]" and to hear, enter interlocutory orders, and submit findings of fact and conclusions of law with respect to non-core proceedings that are related to a bankruptcy case. Thus, bankruptcy courts have jurisdiction over core proceedings and related proceedings.

"Core proceedings are proceedings which have no existence outside of bankruptcy."[19] Section 157(b)(2) enumerates a non-exhaustive list of core proceedings. In *Wood v. Wood (In re Wood)*, the Fifth Circuit provided the following helpful explanation of what is a core proceeding:

If the proceeding involves a right created by the federal bankruptcy law, it is a core

---

[15] *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001)

[16] *Continental Carbon Co.*, 428 F.3d at 1292

[17] *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990).

[18] All future references to "Section" or "§" refer to Title 11 of the United States Code, unless otherwise noted.

[19] *Gardner,* 913 F.3d at 1518.

6

proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.[20]

A core proceeding must always involve or have implications concerning property of the bankrupt estate.[21]

The Bank's counterclaims are not "core proceedings" under § 157(b). The Bank invokes diversity jurisdiction to bring its patent misuse and conversion claims against the Plaintiffs.[22] As to the counterclaims' effort to "seek[] adjudication of the validity, extent, or priority of its lien to this property, and the extent that this property was conveyed to the debtor []," the Bank claims these are core proceedings.[23] The Court concludes that they are not core proceedings because the claims against the Plaintiffs relate to liens granted by Shoring in the accounts receivables and TABLA inventory. The TABLA products that Shoring transferred to the Debtor were subsequently sold in a court-approved sale to the Bank subject to GPT's claims and are no longer property of the Debtor's estate.[24] In addition, the state law claims do not "arise under" title 11 because neither cause of action was created by or is governed by the Bankruptcy Code. Nor can it be said that these claims "arise

---

[20] 825 F.2d 90, 97 (5th Cir. 1987).

[21] *Cont'l Nat'l Bank v. Sanchez ( In re Toledo)*, 170 F.3d 1340, 1347–48 (11th Cir.1999). *See also Holland Indus. Inc. v. United States (In re Holland Indus., Inc.*), 103 B.R. 461, 465 (In referring to determinations of the validity, priority, and extent of liens, § 157(b)(2)(K) is to be construed to refer to liens on property of the estate.).

[22] Dkt. 12 at 3.

[23] Dkt. 36 at 5.

[24] *See Gardner*, 913 F.2d at 1518.

7

in" the Debtor's bankruptcy case. Neither cause of action is based upon rights that cannot be pursued outside the bankruptcy context. Since the Bank's counterclaims do not depend on the bankruptcy laws for their existence, can proceed in state court or federal district court, and do not involve property of the bankrupt estate, they are not core proceedings.

Neither are these claims "related to" the bankruptcy case. "Related to" proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court[25] and whose possible outcomes "could conceivably have any effect on the estate being administered in bankruptcy."[26] Although a proceeding need not be against the debtor or his property, the proceeding is only related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way that impacts the handling and administration of the bankruptcy estate.[27]

The Bank argues that its Counterclaim is a related to proceeding because if it prevails against the Plaintiffs and they are required to disgorge the outstanding and/or collected receivables, or to disgorge the inventory in its possession, the Bank's and other creditors' claims against the bankruptcy estate could potentially be reduced. The Court disagrees. The Bank's counterclaims involve a conflict between two creditors over property bought by the Bank with a credit bid. The property in question is no longer a part of the bankruptcy estate. The Bank's claims in the bankruptcy have already been reduced to reflect the credit bid. If the Bank prevails, it will benefit from the recovery. The Bank's patent misuse and conversion claims will not "impact the handling

---

[25] *In re Colo. Energy Supply, Inc.*, 728 F.2d 1283, 1286 (10th Cir. 1984).

[26] *Gardner*, 913 F.2d at 1518.

[27] *Id.*

8

and administration of the bankruptcy estate."[28] This Court lacks subject matter jurisdiction of the Bank's counterclaims and they should accordingly be dismissed.

**B.     Plaintiffs' Motion to Voluntarily Dismiss their Complaint Under Rule 41(a)(2)**

Rule 41(a)(2) requires a court to review a motion by a plaintiff to dismiss a complaint if the action has proceeded beyond service of an answer or of a motion for summary judgment, and there is not unanimous agreement among all parties supporting the dismissal. That rule further provides that "if a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." The purpose of Rule 41(a)(2) is "primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions."[29] When considering a voluntary motion to dismiss, "the important aspect is whether the opposing party will suffer prejudice in the light of the valid interests of the parties. It is the prejudice to the opposing party, rather than the convenience of the court, that is to be considered in passing on a motion for dismissal."[30] Among the factors to be considered by the

---

[28] Even if the Bankruptcy Court had supplemental jurisdiction to hear the Bank's counterclaims against the Plaintiffs (a matter of considerable dispute), the Court would likely abstain. Section1334(c)(1) provides for discretionary abstention "in the interest of justice, or in the interest of comity with State courts or respect for State law." The Bank's counterclaims involve not only state contract and secured transaction law, two staples of this Court's competence, but also implicate the application of patent law, perhaps Canadian patent law. That topic is far this Court's core competence, suggesting that these claims might better be pursued in federal district court. In this situation, the Court deems it more appropriate to abstain from hearing the Bank's claims against the Plaintiffs to allow these non-bankruptcy issues to be resolved in a non-bankruptcy forum.

[29] *Clark v. Tansy*, 13 F.3d 1407, 1411 (10th Cir. 1993) (quotation omitted).

[30] *Id.* (quotations and alterations omitted); *see also Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997) ("Absent 'legal prejudice' to the defendant, the district court normally should grant such a dismissal.").

9

district court in making this evaluation are: "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of litigation."[31] This list of factors "is by no means exclusive," and factors that are "unique to the context of the case" must also be considered.[32] In reaching its conclusion, "[t]he district court should endeavor to insure substantial justice is accorded to both parties," and therefore the court "must consider the equities not only facing the defendant, but also those facing the plaintiff."[33] The decision to grant or deny a voluntary dismissal is addressed to the sound discretion of the court.[34]

The Plaintiffs state they seek to dismiss their case against the Debtor and the Bank because the issues raised in their complaint have been resolved.[35] They sought a determination of the respective parties' interests on the Debtor's TABLA products. With the sale of the Debtor's TABLA products and its purchase by the Bank via credit bid, the property has left the estate and, because the Bank bid its debt, there are no cash proceeds to argue about. The Court agrees with the Plaintiffs that their Complaint is essentially moot.

The Bank conditions its objection to the dismissal of the Plaintiffs' Complaint upon the Plaintiffs disclaiming "any interest of any nature in the TABLA products, such that any buyer of those products from [the Bank] takes [them] free of any claim that [GPT may have] that would limit

---

[31] *Ohlander*, 114 F.3d at 1537.

[32] *Id.*

[33] *Id.*

[34] *Clark,* 13 F.3d at 1411.

[35] Dkt. 33 at. 1.

10

the purchaser's ability to use or sell the material."[36] In other words, if the Plaintiffs disclaim, the Bank will not oppose the dismissal. The Bank argues that permitting the dismissal of this adversary without a final resolution allows a cloud to persist over all of the TABLA products, preventing it from realizing full value for its collateral. The Bank claims this disclaimer would eliminate the cloud over the products that the Plaintiffs have created.[37]

The Bank's disclaimer request is too broad. It does not clearly identify the TABLA products as to which it seeks a disclaimer. Courts will not award the defendant more relief than the defendant could have obtained through an adjudication of the lawsuit on the merits.[38] A judgment on the Plaintiffs' Complaint would only establish the parties' rights as to the TABLA products sold in Sales #7 and #9, not all TABLA products in the Plaintiffs' or Shoring's hands.

The Court finds that other factors weigh in favor of dismissal. This case is still in the early stages, the Plaintiffs sought voluntary dismissal fairly quickly, and they have provided a legitimate and sufficient explanation for dismissal. As the Bank has failed to establish that a dismissal of this action with prejudice will cause it any undue harm, the Court grants the Plaintiffs' motion for voluntary dismissal without conditions.[39]

---

[36] Dkt. 36 at 3-4.

[37] *Id.* at 4.

[38] 8 Moore's Federal Practice, §41.40[10][c], 41-174 (3rd ed. 2010) citing *Ferrato v. Castro,* 888 F.Supp. 33, 34 (S.D. NY. 1995)(refusing to impose condition that would protect defendant from all future copyright infringement claims by plaintiffs regardless of circumstances).

[39] The Bank also requested this Court condition dismissal on the Plaintiffs consenting to personal jurisdiction and service of process in the United States District Court for the District of Kansas. Dkt. 36. at 6. This condition would be gratuitous because GPT and Gilcheck previously filed suit against Shoring and its shareholders in the United States District Court for the District of Kansas, Case No. 2:10-cv-02132-JWL-JPO. Accordingly, it is unnecessary for this Court to

11

Case 10-05137    Doc# 42    Filed 05/27/11    Page 11 of 12

Finally, the Bank argues that Rule 41(a)(2) precludes the Plaintiffs' voluntary dismissal of their Complaint because such a dismissal would violate the Rule's prohibition against dismissing an action over a defendant's objection where the plaintiff's claim was necessary to preserve jurisdiction over the counterclaims. The Bank's counterclaims are dismissed for lack of subject matter jurisdiction based on the TABLA products no longer being part of the Debtor's estate, not as a result of the Plaintiffs' motion to voluntarily dismiss under Rule 41(a)(2).[40]

**Conclusion**

The Plaintiffs' motion to dismiss the Bank's counterclaims is GRANTED. The Plaintiffs' motion to voluntarily dismiss with prejudice their adversary Complaint is GRANTED.

# # #

---

require them to consent to personal jurisdiction and service of process in the United States District Court for the District of Kansas.

[40] *See Furminator, Inc. v. Ontel Products Corp.*, 246 F.R.D. 579, 594 fn 11 (E.D. Mo. 2007) (counterclaims dismissed because plaintiff's convenant not to sue destroyed the court's subject matter jurisdiction over counterclaims and not as a result of plaintiff's motion to voluntarily dismiss under Rule 41(a)(2)).